POLEN, J.
US Acquisition, LLC (“US Acquisition”), appeals the trial court’s order granting Tabas, Freedman, Soloff, Miller & Brown, P.A.’s (“Tabas Freedman”) motion to enforce attorney’s charging lien (Case No. 4D10-3635). Tabas Freedman appeals the trial court’s final order determining attorney’s fees and costs (Case No. 4D11-715). These two separate appeals were previously consolidated by this court for record purposes, but we now sua sponte consolidate these two appeals for opinion purposes. Due to Tabas Freedman’s failure to record the charging lien with the Federal Aviation Administration (“FAA”), the lien was not perfected, pursuant to title 49, United States Code, section 44108(a). As a result, we reverse the trial court’s order enforcing the attorney’s charging lien which was attached to an aircraft.
Rockbridge Commercial Bank (“Rock-bridge”) was the lender in a transaction with Kaizen Aviation, LLC (“Kaizen”) where Kaizen borrowed over five million dollars from Rockbridge. A promissory note was executed and delivered and Kaizen defaulted on the obligations therein by failing to make monthly payments. The loan was secured by an aircraft as collateral. Tabas Freedman was retained by Rockbridge to file an action in replevin to recover the collateral aircraft. An order granting the request for a writ of replevin was granted, stating that there was a perfected security interest in the aircraft and the owner of the collateral aircraft undis-putedly defaulted. A separate order directing clerk of court to issue writ of re-plevin was also issued.
Subsequent to filing the replevin action, Rockbridge was taken over by the Federal Deposit Insurance Corporation (“FDIC”) and FDIC was substituted for Rockbridge in the action. Tabas Freedman filed a notice and claim of attorney’s charging lien, alleging its representation of Rock-bridge, as well as the unpaid amount of $56,425.21.[1] Tabas Freedman soon withdrew as counsel from the action, while the outstanding debt remained unpaid by the bank to the law firm. It also filed a motion to enforce attorney’s charging lien and an order granting the motion was entered. US Acquisition became a party to this action when it was substituted for FDIC after it acquired the loan at an auction sale.
This appeal, case number 4D10-3635, followed the order granting the motion to enforce the charging lien, as U.S. Acquisition argues the validity of the lien due to Tabas Freedman’s failure to record the lien with the FAA.
“The charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit. It serves to protect the rights of the attorney.” Sinclair; Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383, 1384 (Fla.1983). To impose such a lien, there must be: an express or implied contract between the attorney and client; an express or implied understanding that payment depends upon recovery; and to recover, there must be a failure to pay fees and/or a dispute to the amount of those fees. Id. at 1385. To perfect a charging lien, the only requirement is timely notice. Id.
*1232 In this case of first impression, U.S. Acquisition argues that because Ta-bas Freedman did not record the charging lien with the FAA, pursuant to the Federal Aviation Act of 1958, the lien was not perfected and, therefore, invalid. Tabas Freedman contends that U.S. Acquisition bases its arguments on inapplicable case law and that it put U.S. Acquisition on notice, thereby perfecting the lien. US Acquisition relies heavily on Creston Aviation, Inc. v. Textron Financial Corp., 900 So.2d 727 (Fla. 4th DCA 2005), which provides that “[ujntil a lien or other interest affecting title in a civil aircraft is recorded in the federal registry, it is valid only against those with actual notice.” Id. at 729. The purpose of recordation when aircraft title is affected is to “create a central clearing house for recordation of title and liens affecting civil aircraft ... so that a person would know where to find ready access to this type of information.” Id.
The lien at issue in Creston Aviation was a mechanic’s lien which was placed on the aircraft for services to the actual aircraft. Id. at 728-29; see § 329.51, Fla. Stat. (2011). The notice and claim of attorney’s charging lien in this case states that the lien is in the amount of $56,425.21 for unpaid compensation for legal services rendered. Section 713.58, Florida Statutes, explains that a lien for labor, or a mechanic’s lien as in Creston Aviation, is placed on the property of the person for whom labor or services are being performed, in favor of the person performing the labor or services. § 713.58, Fla. Stat. (2011). Such a lien is a possessory right of the serviceman’s and once he relinquishes possession, the lien is extinguished. Commercial Jet, Inc. v. U.S. Bank, N.A., 45 So.3d 887, 888 (Fla. 3d DCA 2010). A charging lien attaches to the judgment to ensure an attorney is compensated for his services. Leiby Taylor Steams Linkhorst & Roberts, P.A. v. Wedgewood Air Conditioning, Inc., 801 So.2d 127, 129 (Fla. 4th DCA 2001).
Title 49, United States Code, section 44108(a)[2] requires that a conveyance, lease or instrument securing an aircraft is recorded in order to achieve validity against anybody but the parties involved or those having actual notice thereof. 49 U.S.C. § 44108(a) (2011). The lien in this case claims “entitlement to the aircraft” to the extent of “whatever the plaintiffs rights are in the aircraft or the proceeds of the aircraft based upon the work that [the] firm did in procuring the aircraft for this plaintiff.” We hold that the lien in this case is not a mechanic’s lien, thus distinguishing Crestón Aviation; however, the lien in this case is also not a typical charging lien that requires only timely notice because, if granted, it grants “entitlement to the aircraft” to the lienor.
The explanation offered by Tabas Freedman at its hearing stated that the law firm was claiming entitlement to the aircraft to the extent of the plaintiffs rights or entitlement to the proceeds from the aircraft. The notice and claim of attorney’s charging lien filed by Tabas Freedman also expressed that its lien attached to “all of the Plaintiffs rights, title and interest in any property or judgment that Plaintiff recovers.” Plaintiffs entitlement could include possession of the aircraft itself or its parts and/or “any and all logs, manuals and other technical records documents relating thereto, and together with any and all other associated items.”
In Crestón Aviation, this court explained that the purpose of recording the interests in aircrafts with the FAA “is operative to the extent that if the title or *1233 lien interest is not recorded in the FAA Aircraft Registry, then it will not be valid as against third parties without notice.” Creston Aviation, 900 So.2d at 731. The Supreme Court of the United States held in Philko Aviation, Inc. v. Shacket, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983), that Congress intended to protect innocent third parties from unknowingly accepting the transfer of an aircraft which has some claim, lien, or other legal interest attached. See id. at 411, 103 S.Ct. 2476. The recording system creates a centralized location for all potential transferees to search the FAA records before acquiring an interest in an aircraft without clear title. Id. Failure to record results in the misconception that title is clear when, in fact, the transferee is taking the aircraft subject to some lien, or other claim or interest. See id. at 411 n. 5, 103 S.Ct. 2476.
While it is true that a charging lien requires only timely notice for perfection, the charging lien in this case does not only attach to a monetary judgment, but also to the actual aircraft and/or its parts. Therefore, the lien which is attached to the aircraft should be recorded with the FAA, pursuant to federal law, to protect any third parties from subsequently purchasing an interest in the aircraft which inaccurately appears to have free and clear title. US Acquisition purchased the loan to the aircraft without notice, actual or constructive, that a lien was attached by Tabas Freedman. This is the exact situation which recordation would prevent, thereby shifting responsibility to the transferee to diligently search the FAA’s registry before obtaining an interest in the aircraft.
Tabas Freedman alleges that it attempted to record the lien, but the FAA refused to record because the lien did not affect the aircraft and only directs payment of money. However, the language in the letter from the FAA states that “The Order Granting Tabas, Freedman, Soloff, Miller & Brown PA’s Motion to Enforce Attorney’s Charging Lien” need not be recorded because it does not affect the aircraft itself. The correspondence does not support Tabas Freedman’s assertion that it did not have to record the actual charging lien and only shows the ineligibility of the court’s order referring to the enforcement thereof.
Based on current statutory and case law, as well as the facts of this case, we reverse the trial court’s order enforcing the charging lien which attached to the aircraft because the lien was not perfected through the act of recordation with the FAA, pursuant to title 49, United States Code, section 44108(a).
As to the issue of attorneys’ fees, case number 4D11-715, Tabas Freedman relies on a retainer agreement between the firm and its client, Rockbridge, which stated in relevant part that “[cjlient will be responsible for any attorneys’ fees incurred by Tabas Freedman in conjunction therewith including appellate fees” if payments are sought after using legal resources. The retainer agreement led to a separate appeal by Tabas Freedman when the trial court entered an order determining attorneys’ fees, reducing the amount of the award. After Tabas Freedman filed a motion for rehearing, which the trial court granted, an order was entered explaining that:
In reducing the number of hours determined by the Court to be reasonable in connection with Tabas Freedman’s charging lien, the Court deducted time that was spent after Tabas Freedman was notified that its services were no longer necessary and also deducted time that was not actually spent on representation of the client.
Tabas Freedman timely appealed the trial court’s order, arguing that it was *1234 error for the trial court to reduce the fees because the retainer agreement entitled it to fees incurred for its collection efforts. In reliance on Gossett & Gossett, P.A. v. Mervolion, 941 So.2d 1207 (Fla. 4th DCA 2006), Tabas Freedman argues that fees were recoverable and must be awarded if a contract provides as such.
This court reviews a trial court’s award of attorneys’ fees for abuse of discretion. Daddono v. Miele, 69 So.3d 320, 324 (Fla. 4th DCA 2011). However, a “trial court’s interpretation of a contract is a matter of law subject to a de novo standard of review.” Gossett, 941 So.2d at 1210 (citing Leisure Resorts, Inc. v. City of W. Palm Beach, 864 So.2d 1163, 1166 (Fla. 4th DCA 2003)). As discussed above, “[t]he charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit. It serves to protect the rights of the attorney.” Sinclair, 428 So.2d at 1384 (citation omitted). “In order for a charging lien to be imposed, there must first be a contract between the attorney and the client.” Id. at 1385 (citation omitted).
In Gossett, this court reversed the trial court’s order which refused to award fees to a law firm for filing a supplemental petition to enforce its charging lien. Gossett, 941 So.2d at 1209. This court reasoned that “[i]n this case, the language of the contract is clear that by appellant’s filing of a supplemental petition to enforce its charging lien, it met the requirement of ‘necessary to institute suit for the collection of fees and advances due to us by you.’ ” Id. at 1210. This court relied on Berryer v. Hertz, 522 So.2d 510 (Fla. 3d DCA 1988), where a retainer agreement contained similar language. Id. at 511. The Third District held that the attorney/defendant “could counterclaim for the balance of his fee pursuant to the original retainer agreement,” and was also entitled “to attorney’s fees incurred in defending the case and prosecuting the counterclaim,” pursuant to the agreement. Gossett, 941 So.2d at 1210; see also Berryer, 522 So.2d at 511. Accordingly, this court held that “the trial court erred as to this issue by denying appellant attorney’s fees for having to bring the supplemental petition.” Gossett, 941 So.2d at 1210. The case was reversed and remanded, directing the trial court to conduct an evidentiary hearing to determine reasonable attorneys’ fees. Id. After the evidentiary hearing was conducted, the trial court should have then entered an amended final judgment. Id.
Therefore, based on this court’s holding in Gossett and the facts specific to the retainer agreement in this case, we hold that the trial court also erred in reducing the attorneys’ fees award.
Also on the issue of attorneys’ fees, Ta-bas Freedman moved for fees pursuant to Florida Rule of Appellate Procedure 9.400. Rule 9.400(b), in conjunction with subsection (a) of the same rule, allows the appellate court to award attorneys’ fees to the prevailing party when a timely motion for such fees is filed. Fla. R.App. P. 9.400(a-b). In its response to Tabas Freedman’s motion for attorneys’ fees, U.S. Acquisition likewise moved for attorneys’ fees pursuant to rule 9.400. Due to our reversal of the trial court’s order enforcing charging lien, we grant the motion for attorneys’ fees in favor of U.S. Acquisition and deny the motion for attorneys’ fees against Ta-bas Freedman.

Affirmed in part; Reversed in part; and Remanded.

TAYLOR and HAZOURI, JJ., concur.

. Tabas Freedman stated at a related hearing that "all [they] have to do is provide notice of the charging lien.” In other words. Tabas Freedman concedes that the lien was not recorded with the FAA.

. Also known as the Federal Aviation Act of 1958. Creston Aviation, 900 So.2d at 730.